IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| MARY ANN ROBINSON and | : | |
|---|---|---|
| DANIEL ROBINSON, husband and wife | : | CIVIL ACTION |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| NATIONWIDE MUTUAL INSURANCE | : | |
| COMPANY, s/b/m HARLEYSVILLE | : | |
| MUTUAL INSURANCE | : | NO. 12-5065 |
| COMPANY, et. al. | : | |
| | : | |
| Defendants. | : | |

MEMORANDUM

BUCKWALTER, S.J.                                                                February 26, 2013

Currently pending before the Court is Defendant Erie Insurance Company's Motion to Dismiss Plaintiffs Mary Ann and Daniel Robinson's Bad Faith Claims, Defendant S.W. Krout, Inc.'s Motion to Dismiss Plaintiffs' Punitive Damage Claims, and Defendant Nationwide's Motion to Bifurcate. For the following reasons, Erie and Nationwide's Motions are denied and S.W. Krout's Motion is granted.

I.   FACTUAL AND PROCEDURAL BACKGROUND

This suit arises out of two floods that damaged Plaintiffs' home. The facts, as set forth in the Second Amended Complaint, are as follows. Plaintiffs' home in Horsham, Pennsylvania, was insured by Defendants Nationwide Mutual Insurance Company ("Nationwide") and Erie Insurance Company ("Erie"). (Second Am. Compl. ¶¶ 1, 5–8.) Nationwide provided a flood insurance policy on the property while Erie provided a homeowner's insurance policy. (Id. ¶¶

5–8.)

On August 28, 2011, the property flooded as a result of Hurricane Irene, causing property damage. (Id. ¶¶ 9–10.) On August 29th, the Robinsons had the water from the flooded basement pumped out. (Id. ¶ 11.) Thereafter, they hired Defendant S.W. Krout Inc. ("Krout") to repair their heater and level their oil tank. (Id.) However, Defendant Krout failed to cap off the fuel oil tank. (Id. ¶ 12.) Upon noticing this, the Robinsons called Krout to return to the residence and properly cap the tank. (Id.) Defendant Krout failed to come out and cap the tank. (Id. ¶ 13.) Krout stated on the phone to Plaintiffs that they were too busy to come out and fix the dangerous condition. (Id. ¶ 14.) On or about September 4th, a flood adjuster from Nationwide came to the property to assess the damage from the hurricane. (Id. ¶ 20.) The adjustor informed the Robinsons that their heater could be repaired or replaced, but that the fuel tank did not need replacement. (Id.)

On September 8th, the property was again flooded as a result of Tropical Storm Lee. (Id. ¶ 21.) As a result of this flooding, the fuel oil tank in the Robinsons' home fell over, and half a tank of oil—approximately 130 gallons—spilled out of the tank. (Id. ¶ 23.) Due to the damage, Plaintiffs were unable to continue living in their home and were forced to pay for a rental unit. (Id. ¶¶ 25–26.) Plaintiffs also needed to hire an environmental company to assess and clean up the hazardous condition at their home. (Id. ¶ 28.) Additionally, Plaintiffs suffered serious medical problems. (Id. ¶ 27.) Neither Nationwide nor Erie has paid for the damage sustained to Plaintiffs' property. (Id. ¶¶ 35, 42, 51, 59.)

On August 12, 2012, the Robinsons filed suit against Nationwide, Erie, and S.W. Krout in the Court of Common Pleas for Montgomery County, Pennsylvania. The case was removed to

this Court on September 5, 2012. After an Amended Complaint and two rounds of Motions to Dismiss, a Second Amended Complaint was filed on December 24, 2012 alleging ten claims: Counts I and II for breach of contract against Nationwide; Counts III and IV for breach of contract against Erie; Counts V and VI for bad faith against Erie, Counts VII and VIII for negligence against S.W. Krout by Mary Ann and Daniel Robinson respectively; and Counts IX and X for loss of consortium against S.W. Krout by Mary Ann and Daniel Robinson respectively. On January 14, 2013, Erie filed a Motion to Dismiss the bad faith claims against it. On the same day, S.W. Krout filed a Motion to Dismiss the claims against it for punitive damages. The Robinsons filed responses to both Erie and Krout's motions on January 29, 2013. Additionally, on January 24, 2013, Nationwide filed a Motion to Bifurcate the Trial. On February 8, 2013, Krout filed a Response in opposition to Nationwide's Motion. On February 11, 2013, the Robinsons also filed a Response in opposition. Finally, on February 19, 2013, Nationwide filed a Reply. The Court will now consider the merits of these Motions.

## II. ERIE'S MOTION TO DISMISS PLAINTIFFS' BAD FAITH CLAIMS

### A. Standard of Review

Under Rule 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted. Fed. R. Civ. P.12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). In Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), the United States Supreme Court recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555. Following these basic dictates, the Supreme Court, in Ashcroft v. Iqbal, 556 U.S. 662 (2009), subsequently

defined a two-pronged approach to a court's review of a motion to dismiss. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. Thus, although "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678–79. Second, the Supreme Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 679. "Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. A complaint does not show an entitlement to relief when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct. Id.; see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232-34 (3d Cir. 2008) (holding that: (1) factual allegations of complaint must provide notice to defendant; (2) complaint must allege facts suggestive of the proscribed conduct; and (3) the complaint's "'factual allegations must be enough to raise a right to relief above the speculative level'") (quoting Twombly, 550 U.S. at 555)).

      Notwithstanding these new dictates, the basic tenets of the Rule 12(b)(6) standard of review have remained static. Spence v. Brownsville Area Sch. Dist., No. Civ.A.08-626, 2008 WL 2779079, at *2 (W.D. Pa. July 15, 2008). The general rules of pleading still require only a short and plain statement of the claim showing that the pleader is entitled to relief and need not contain detailed factual allegations. Phillips, 515 F.3d at 233. Further, the court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the

4

plaintiff." Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006). Finally, the court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Pinkerton v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002).

**B.    Discussion**

The Pennsylvania General Assembly has promulgated a statute under which insurers may be held liable for their "bad faith" actions towards insureds.[1] While the statute does not explicitly define "bad faith," both the Pennsylvania federal and state courts have recognized that, in the insurance context, "bad faith" is synonymous with "frivolous or unfounded refusal to pay proceeds of a policy." Keefe v. Prudential Prop. & Cas. Ins. Co., 203 F.3d 218, 225 (3d Cir. 2000) (internal citations and quotations omitted); Treadways, LLC v. Travelers Indem. Co., No. Civ.A.08-4751, 2011 WL 1672022, at *2–3 (E.D. Pa. May 4, 2011) (citing Terletsky v. Prudential Prop. & Cas. Ins. Co., 649 A.2d 680, 688 (Pa. Super. Ct. 1994)) (further citation omitted); Atiyeh v. Nat'l Fire Ins. Co., 742 F. Supp. 2d 591, 598 (E.D. Pa. 2010) (internal citations omitted). In order to prevail on a bad faith claim, a claimant must show by clear and convincing evidence that: (1) the defendant insurer did not have a reasonable basis for denying the policy benefits; and (2) that the insurer knew or recklessly disregarded its lack of reasonable

---

[1] The statute provides, in relevant part, that:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions: (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of the interest plus 3%; (2) Award punitive damages against the insurer; (3) Assess court costs and attorney fees against the insurer.

42 Pa. Cons. Stat. § 8371.

basis when it denied the claim. Keefe, 203 F.3d at 225 (3d Cir. 2000) (further citation omitted). The "clear and convincing" standard requires a claimant to show that "the evidence is so clear, direct, weighty and convincing as to enable a clear conviction, without hesitation, about whether or not the defendants acted in bad faith." J.C. Penney Life Ins. Co. v. Pilosi, 393 F.3d 356, 367 (3d Cir. 2004) (internal quotations and citation omitted). Moreover, the claimant must show that the insurer acted in bad faith based on some motive of self-interest or ill will. Atiyeh, 742 F. Supp. 2d at 598 (citing Brown v. Progressive Ins. Co., 860 A.2d 493, 501 (Pa. Super. Ct. 2004)). In doing so, a claimant need not show that the insurer's conduct was fraudulent, but mere negligence or bad judgment is insufficient to make out a claim based on bad faith. Id.

In seeking to dismiss the bad faith claim, Erie contends that Plaintiffs have failed to allege facts sufficiently to support an allegation of bad faith. In doing so, Erie cites this Court's opinion in an analogous case, Miracle Temple Christian Academy v. Church Mut. Ins. Co., No. Civ.A.12-995, 2012 WL 1286751, at *3 (E.D. Pa., Apr. 16, 2012). In that case, we dismissed a bad faith allegation by noting that the claim fell short of Iqbal's standard since it alleged nothing more than conclusory legal statements. Id. In doing so, we remarked that the complaint failed to allege facts which would support a finding that the defendant acted with a dishonest purpose or that it lacked a reasonable basis for denying benefits. Id.

The Complaint in this case, however, succeeds where the complaint in Miracle Temple failed. Specifically, under the bad faith claim against Erie, Plaintiff lists a number of alleged actions Erie took:

        a.      Misrepresented the benefits, advantages, conditions or terms of its insurance policy;
        b.      Misrepresented pertinent facts or policy or contract provisions

     relating to coverage at issue;
  c. Failed to acknowledge and act promptly upon written or oral communications with respect to claims arising under the applicable homeowner's insurance policy;
  d. Failed to conduct a reasonable and thorough investigation into the loss;
  e. Failed to interpret ambiguous policy language in Plaintiffs' favor;
  f. Provided inconsistent and conflicting estimates of Plaintiffs' loss;
  g. Refused to pay claims without conducting a reasonable investigation based upon all available information before denying the claim;
  h. Did not attempt, in good faith, to effectuate prompt, fair, and equitable settlement of claims in which the company's liability under the policy had become reasonably clear;
  i. Acted to compel Plaintiffs to institute litigation to recover amounts due under a homeowner's insurance policy by offering substantially less than the amounts due and ultimately to be recovered in the action brought by Plaintiffs;
  j. Unreasonable denying payment for amounts covered under the applicable homeowner's insurance policy despite Plaintiffs' entitlement to said benefits;
  k. Failed to visit the property to fully assess the damage to Plaintiffs' home and to provide benefits under the applicable policy;
  l. Did not pay amounts due under the policy despite repeated requests, both written and oral, for same;
  m. Failed to provide a reasonable explanation for its denial of benefits under the policy.

(Second Am. Compl. ¶¶ 60, 64.)

  These facts are more than sufficient to meet the Iqbal standard and, if proven, would meet the clear and convincing standard to show that Erie "did not have a reasonable basis for denying the policy benefits" and "knew or recklessly disregarded its lack of reasonable basis when it denied [Plaintiffs'] claim." Additionally, the alleged facts are particular enough to allow Erie to respond appropriately in an Answer. As such, Erie's Motion to Dismiss for failure to state a claim is denied.

## III. S.W. KROUT'S MOTION TO DISMISS PLAINTIFFS' CLAIMS FOR PUNITIVE DAMAGES

### A. Standard of Review

The legal standard for punitive damages for state law claims is a matter of state law. See Griffiths v. CIGNA Corp., 857 F. Supp. 399, 409-10 (E.D. Pa. 1994), aff'd, 60 F.3d 814 (3d Cir. 1995) (further citation omitted). The Supreme Court of Pennsylvania has adopted Section 908(2) of the Restatement (Second) of Torts, which allows punitive damages for "conduct that is outrageous because of the defendant's evil motive or his reckless indifference to the rights of others." Rizzo v. Haines, 555 A.2d 58, 69 (Pa. 1989) (quoting Restatement (2d) Torts § 908(2) (1977)). The Third Circuit has recognized that Pennsylvania strictly interprets the recklessness standard. Burke v. Maassen, 904 F.2d 178, 181 (3d Cir. 1990). More specifically, "[a] court may award punitive damages only if the conduct was malicious, wanton, reckless, willful, or oppressive." Rizzo, 555 A.2d at 69 (citing Chambers v. Montgomery, 192 A.2d 355, 358 (Pa. 1963)). In making such an inquiry, a court must consider the conduct at issue, including the motive of the wrongdoers and the relations between the parties. Feldman v. Trust Co. Bank, No. Civ.A.93-1260, 1993 U.S. Dist. LEXIS 14059, 1993 WL 405831, at *3 (E.D. Pa. Oct. 4, 1993) (internal citations and alteration of text omitted). Moreover, the tortfeasor's state of mind is also relevant, and his actions must have been intentional, reckless, or malicious. Russoli v. Salisbury Twp., 126 F. Supp. 2d 821, 874 (E.D. Pa. 2000). In considering whether punitive damages are warranted at the Motion to Dismiss stage, the Court is required to view the allegations in the light most favorable to the Plaintiffs. Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006).

### B. Discussion

Plaintiffs seek punitive damages against S.W. Krout because they claim Krout's combined failure to cap the oil tank when first conducting repairs at the property and failure to return and rectify the situation after being notified constituted deliberate indifference. In support, the Robinsons note that Krout has been operating since 1915, knew of the danger of the second storm, and failed to correct the situation. In response, Krout highlights that its alleged conduct, even if accepted at true, only rises to the level of negligence. Additionally, Krout notes that Plaintiffs have not alleged that he acted with reckless indifference towards their safety.

The Court agrees with Krout. Even taking the actions pled in the Complaint as true and in a light most favorable to the Plaintiffs, there is no indication that Krout's actions constituted reckless indifference, particularly in light of the short time span between the two storms. As a result, punitive damages against it are not warranted in this case.

## IV. NATIONWIDE'S MOTION TO BIFURCATE

### A. Standard of Review

Rule 42(b) of the Federal Rules of Civil Procedure allows a district court to bifurcate a trial in its discretion. Rule 42(b) provides that, "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P. 42(b). Whether to bifurcate a trial is a "matter to be decided on a case-by-case basis and must be subject to an informed discretion by the trial judge in each instance." Sprinturf, Inc. v. Sw. Recreational Indus., Inc., No. Civ.A.01-7158, 2004 WL 96751, at *1 (E.D. Pa. Jan. 15, 2004) (quoting Lis v. Robert Packer Hosp., 579 F.2d 819, 824 (3d Cir.1978)); see also 9 Charles Alan Wright &

Arthur R. Miller, Federal Practice & Procedure § 2388 (2d ed. 2002) ("[U]ltimately the question of separate trials under Rule 42(b) should be, and is, a matter left to the discretion of the trial court. . . ."). "The moving party bears the burden of demonstrating that bifurcation would serve judicial economy, avoid inconvenience, and not prejudice any of the parties." Innovative Office Prods., Inc. v. Spaceco, Inc., No. Civ.A.05-4037, 2006 WL 1340865, at *1 (E.D. Pa. May 15, 2006). "Courts, when exercising their broad discretion to bifurcate issues for trial under Rule 42(b), should consider whether bifurcation will avoid prejudice, conserve judicial resources, and enhance juror comprehension of the issues presented in the case." Enzo Life Sciences, Inc. v. Digene Corp., No. Civ.A.02-212, 2003 WL 21402512, at *4 (D. Del. June 10, 2003) (citation omitted). "In deciding whether one trial or separate trials will best serve [the above factors] . . . the major consideration is directed toward the choice most likely to result in a just final disposition of the litigation." Id. (quoting In re Innotron Diagnostics, 800 F.2d 1077, 1084 (Fed. Cir. 1986)).

**B.     Discussion**

Nationwide seeks to bifurcate its portion of the trial pursuant to Fed. R. Civ. P. 42(b). Specifically, it relies on Fed. R. Civ. P. 38(a)(2), which states that a demand for jury trial may be disregarded if "the court, on motion or on its own, finds that on some or all of those issues there is no federal right to a jury trial." Due to sovereign immunity, the constitutional right to jury trial does not extend to actions against the United States Government absent an express statutory grant from Congress. Lehman v. Nakshian, 453 U.S. 156, 160–62 (1981). In the context of this case, Nationwide is a participant in the Federal Emergency Management Agency ("FEMA")'s "Write-Your-Own Program" ("WYO"). "The WYO Program is a program whereby private

10

insurance companies are allowed to issue, under their own names as insurers, flood insurance policies under [the National Flood Insurance] Program." Battle v. Seibels Bruce Ins. Co., 288 F.3d 596, 599 (4th Cir. 2002). WYO participants are private companies that "arrange for the adjustment, settlement, payment and defense of all claims arising from policies of flood insurance it issues under the Program, based upon the terms and conditions of the Standard Flood Insurance Policy." 44 C.F.R. § 62.23(d). Claim payments from WYO companies from a Standard Flood Insurance Policies (like the one Nationwide issued to the Robinsons in this case) are made pursuant to the National Flood Insurance Program, established by Congress under the National Flood Insurance Act of 1968. Davis v. Nationwide Mut. Fire Ins. Co., 783 F. Supp. 2d 825, 831 (E.D. Va. 2011) Such claims are paid out of the United States Treasury, rather than from the WYO companies themselves. As a result, there is no Constitutional right to a jury trial for WYO claims. See id. at 840; Kolner v. FEMA, 547 F. Supp. 828, 830 (N.D. Ill. 1982).

Because there is no constitutional right to a jury trial for the Robinsons' claims against it, Nationwide argues that the claims should be bifurcated pursuant to Rule 42(b) and tried separately before the Court. Both the Robinsons and S.W. Krout have filed responses in opposition recommending that the trial need not be bifurcated. They suggest that the claims against Nationwide could be heard and decided by the Court while the claims against the other Defendants could be heard by the jury. The Court agrees with this approach. The issues in this case are not so complex that bifurcation is necessary to avoid confusing a jury. Additionally, there is no indication that any party will be prejudiced by keeping the trial consolidated. Finally, judicial economy will be served by having one trial instead of two. Accordingly, Nationwide's Motion to Bifurcate will be denied.

V.     CONCLUSION

In light of the foregoing, Erie's Motion to Dismiss is denied, as Plaintiffs' Second Amended Complaint adequately details actions taken which, if proven, would demonstrate that Erie acted in bad faith.  Moreover, Nationwide's Motion to Bifurcate is denied.  Though there is no right to a jury trial for the claims against Nationwide, one trial can be held in which claims against Nationwide are decided by the Court and claims against other parties are decided by a jury.  Finally, S.W. Krout's Motion to Dismiss is granted, as even if the allegations against it are taken as true and in a light most favorable to the Plaintiffs, the actions do not rise to the level of recklessness such that punitive damages are warranted.

An appropriate Order follows.